Good morning, Your Honors. Donald Cook for the Plaintiff. The wife is having an affair with a neighbor, if I can use a hypothetical. The neighbor is murdered. The wife's husband denies involvement. The police, though, learn that the wife was having the affair. The police learn also that the husband is a jealous type prone to acts of violence. But the police don't know if husband was aware of the affair. Does the husband remain a suspect? Absolutely. You would not write him off just because you have absence of information that husband knew of the affair. I'm saying this because it's not just a case about orchids, it's a case about a cooperating individual, David Martin, who out of principle works with the Department of Fish and Wildlife to provide information in undercover capacity about the illegal trafficking and importing of orchids. And one of the persons he's been investigating, Andy Phillips, accuses David Martin of having committed this burglary. The fact that David Martin is this cooperating individual who is investigating, among others, Andy Phillips, what Agent McCloud, he's the federal handling agent for David Martin, his opinion of David Martin, they just couldn't see him as being involved in this burglary. And the relationship between David Martin, Andy Phillips, and the obvious possible motive for Andy Phillips to wrongly accuse David Martin of having committed the burglary, because David Martin is an undercover operative for the Department of Fish and Wildlife, is not included in the affidavit, and the district court says that's okay, because at the time that the Phillips identified Martin as a suspect, you have no evidence that in fact Phillips knew he was a suspect being investigated by Martin. Of course, we learn afterward in depositions that in fact he did know. Probable cause requires an evaluation of the totality of the circumstances. And the totality here included David Martin's role with the Department of Fish and Wildlife. Why don't you just tick off the material omissions from the warrant? I mean, that's the basis for your argument. The refusal to provide DNA, number one, that cannot be used as evidence of guilt, the Graves decision. The exercise of a Fourth Amendment right cannot be the basis for probable cause to believe that someone is guilty. Number two, it's not strictly a refusal to provide DNA. When you listen to the tape recording, as well as the later communication between Mr. Martin's attorney and the San Diego prosecutor's office, his concern is, I don't want this information to get out there and be somehow get in the wrong hands because of the people I'm investigating. When it turns out that I'm innocent, you give it back to me, the DNA, and you give me a letter of apology, and I'll give it to you. That's what David Martin was asking for. And the attitude of Mouse, the investigating detective, as well as Silva, the deputy district attorney, is you are guilty. You refuse to give us the DNA. We don't give letters of apology. That means you're guilty. All they had to do was agree to that. Now, instead, in the affidavit, it's portrayed as an outright refusal. Then there's the claim that in the affidavit that Mr. Martin couldn't provide an alibi for his whereabouts. Well, when you, and he didn't know anything about the crime. When you listen to that tape recording, it's a September 2001 conversation that Mouse secretly recorded with David Martin. David Martin knows about the accusation floating around. He acknowledges it. Yeah, it's in internet chat rooms. And he says, I have a pretty good idea when it occurred just a couple of months ago. That is, September 2001, the burglary supposedly occurred just a couple of months ago. That's what David Martin thinks. Well, he's obviously wrong, which Mouse tells him. And then when he tries, that is when David Martin tries to provide information about alibi, he says, you know, give me the information. There's the shuffling through the papers. You can even hear it on the tape recording. He says, I can't get it for you right now, but I can, you know, but I have the information. The warrant states he couldn't provide an alibi when it's obvious that David Martin was willing to provide whatever information he had, that he didn't know the date of the crime, which was December 29th, 2001. He was never asked in the December of 2001. It was, what were your whereabouts in November of 2000? The description of the suspect, not including what Phillips told the Department of Fish and Wildlife. Essentially, defendants took every fact they could use that could point to guilt. The fact that David Martin, for example, knew Andy Orchids, but there's no explanation as to how he knew about Andy Orchids. It's not just that David Martin works for the Department of Fish and Wildlife. It's that he's been investigating Andy Orchids for the illegal importation of that he had decided to rip off. Not putting in the affidavit that there was no information uncovered indicating that David Martin ever drove the kind of old sedan that Phillips said the suspect drove away in. There was nothing in DMV records indicating that David Martin owned any such vehicle. Plus, Agent David Martin says, I've never seen him drive such a vehicle. And finally, there's the fact that Is that material? You have to tell us about omissions that are material. It's material because when you look, when you add it up, that the description doesn't, for example, the description of the suspect as given on the night of the day that Phillips reported the crime doesn't really match David Martin. The fact that David Martin doesn't have a vehicle, the fact that David Martin is working with the Fish and Wildlife investigating Andy Phillips, none of which is material. It's material if it really would have made a difference. I mean, you have a description of a vehicle. I think David Martin's vehicle was gray pickup and the other vehicle was dark blue. Old sedan. Yeah, so you think that's material? Is it night? Quick glance at a vehicle? There was a struggle that ensued for ten minutes between Phillips and the burglar. Phillips struck the burglar on the side of the head. Are you coming to something else? Well, I'm also coming to additional information that Miles had not disclosed in the affidavit because the description of the absence of injuries that David Martin He said Phillips said he hit this burglar I think ten to fifty times with a piece of wood. He bit his left hand. It was profuse bleeding. McLeod never noticed any such injuries with David Martin. McLeod told Miles this fact. McLeod saw David Martin a few days after the burglary occurs. But you start with what is probably the fact that should, I think, grab somebody's attention most of all, which is David Martin is this cooperating individual, not some criminal informant trying to work off a beef, not someone with a criminal record, but a cooperating individual highly trusted by the Department of Fish and Wild Games who is investigating Andy Phillips. Andy Phillips very well may know that fact. And Andy Phillips now has accused David Martin of having committed the burglary. Doesn't that cause one to have some doubt about the credibility of Andy Phillips' claim that it was David Martin? Doesn't that raise the question of maybe Andy Phillips makes this accusation in order to get rid of David Martin, in order to prevent him from being This information is not disclosed in the warrant. And if it is disclosed, as well as the fact that it wasn't David Martin refusing to provide DNA, it was David Martin saying, look, I'll give you my DNA, and when I get exonerated, you give me a letter of apology. And their response is, we don't give letters of apology. A judge sees that in the warrant. Well, let me get this straight. All you have to do is promise to give him a letter of apology if he's exonerated. Give him the letter. You don't have to bother me. He'll do it. None of that is disclosed in the warrant application. That, I submit, is a far different set of facts than simply saying, I'm not cooperating with the police, period, under no circumstances. The message that someone gets from a case like this where you have a cooperating individual like Mr. Martin coming forward to assist the police is, if you assist the police, you get framed. And that's what happened here. There's no doubt there was a frame. For example, I mean, the photographs that later surfaced shows that were taken of Mr. Martin in December of 2000 show he doesn't have a beer. He had shaved it off. He was framed in this case. And he was framed by Phillips because David Martin was investigating him. And therefore, that's what's, that's Phillips' motive to identify Martin. Those facts should have been disclosed in the warrant. Those facts coupled with Martin's I'll give you my DNA if you just promise to give me a letter of apology. Well, you're repeating yourself. You want to save some time for rebuttal. I will. Thank you. Good morning, judges of the panel. My name is Ricky Sanchez. I'm from the Office of County Counsel on behalf of the appellees in this matter. First thing that we'd like to bring to the court's attention is that the plaintiffs make an erroneous argument that the standard for reviewing affidavits under state and federal law are different. The case to which the plaintiff cite in support of that argument is Cook. Cook has been superseded by statute and has been so since 1982. The cases that require state courts to apply the federal standard as provided for by Frank's case is People v. Houston, People v. Luttenberg, People v. Truer, and People v. Bradford, two of which are California Supreme Court cases. And we did take the court's instruction to other counsel and wrote the citation to each of those cases down on a piece of paper and provided it to your clerk. With respect to the plaintiff's argument in this case, the alleged omissions and misrepresentations are the very same items that they argued to the district court below. The district court meticulously analyzed each one of their claims in a 20-9 paper. Our review is de novo. It certainly is. All right. So. With respect to, and what we can do for you, Your Honor, is simply ask the first question, why not include all of the data that the plaintiff suggests constitute omissions and misrepresentations? Well, how about the fact that Phillips said that he hit him with a stick 10 to 50 times? There's blood all over the place. He bit him on the hand. Must have been. And that when they talked to McLeod, and McLeod, I think a week later, or McLeod's, whenever he talked to McLeod, McLeod said, well, he'd seen him a week after and there wasn't a mark on him. Thank you for bringing that to our attention, Your Honor. Isn't that important? It is not important because, as the court probably is aware. He got hit with his piece of wood 10 to 50 times, bleeding. They're fighting for 10 minutes. He bites him on the hand. And I see. Comes over a fence. I see Your Honor smiles, but the reason why it is not pertinent or material to the affidavit that was submitted to the superior court was, under Maryland v. Garrison, subsequently acquired information is not to be considered in conjunction with the evaluation. Not subsequently acquired information. That information. He knew this. He knew this at the time he prepared the warrant. He talked to McLeod. That information regarding the 10 to 15 or whatever number of hits came from Mr. Phillips' deposition during discovery in the underlying civil case. What did Mr. Phillips say about that fight he had? The only thing that Mr. Phillips said with respect to the fight that Detective Moss was aware of, prior to the time that he sought the affidavit, was the information contained in the flyer that Mr. Martin had generated only a couple or three days after the burglary on December 29, 2000. And that indicated that he had hit the person with a stick and that he had bitten the person so there might be a bite mark and that there was some blood drawn. That was the extent to which. There was blood there. Yes. Blood and they bit him and he hit him with a stick. And the district court effectively addressed that issue by turning to Detective Moss' explanation that depending on where the stick hurt the person. I'm curious about the district court. Was that in the affidavit? The affidavit itself did not contain a statement regarding, well, pardon me. In the affidavit, Detective Moss does in fact mention the existence of the flyer that the fellow did try to jump over the fence, that he struck the fellow on the side of the head with a piece of wood. That is on page two of the affidavit. He did speak with McLeod. He certainly did. That's what McLeod told him. And that's correct. There were no marks on this guy. That is correct. You don't think that's material? I don't think it is a material point because of the fact that whether or not a person was hit by a stick goes to whether or not it would be visible. He didn't say he didn't have any injuries. He's bleeding. No. He's bleeding. Where did the blood come from? We are talking about the information that Detective Moss had. He bit on the hand. He bit on the hand. It doesn't mean that the skin was broken. He was hit by the stick. It doesn't explain where it was. Do you think he just kissed him on the hand? He bit him on the hand. That is certainly what Mr. Phillips had reported, that he had bitten the suspect on the hand. There is no further explanation in the information provided from Mr. Phillips prior to the affidavit regarding the extent of injury. I think he should have put in there that he spoke with McLeod and that, first of all, McLeod said that Martin had been working for him for some time. He was a very reliable person, or worse to that effect, and that he saw Martin. It wasn't the day after the 29th, but it was, I think, within a week, and there wasn't a mark on him. That could have been included, but it would not have been material for purposes of determining whether or not there was probable cause, because if all we had in this case was Mr. Phillips' identification of Mr. Phillips as the perpetrator. It would certainly indicate that they were going after the wrong guy. It would not indicate that at all, because there are reasonable explanations with respect to why Mr. McLeod might not have seen any visible injuries. Mind you, Mr. McLeod did not inspect the plaintiff in conjunction with any injuries that he may have had on his person. The issue... What about, let me just move to another point here. Shouldn't the officers have disclosed potential problems regarding Phillips' credibility? Illinois v. Gates says an informant's veracity, reliability and basis for knowledge are all highly relevant. Phillips had reason to accuse Martin falsely in order to undermine the investigations Martin was involved in against him. And the affidavit, as I read it, makes it look as if Phillips is a totally disinterested witness. The affidavit itself... And Phillips had seen Martin before he looked at the photo spread. He knew who Martin was. And, Detective... Martin was around there when, I guess as I recall, when one of Phillips' friends was arrested. To answer Judge Nelson's initial question first, with respect to that information... Well, I'm older than she is. Don't you think you ought to... And certainly are sitting in the middle, so you are the presiding also. But I thought I'd take them in order. Well, answer that first. And wiser, so please defer to Judge Pregerson. All right. I'll answer Judge Pregerson first. Don't answer Judge Nelson. She's much nicer. Judge Nelson, with respect to the information attacking the credibility of Mr. Phillips, first, there's his presumptive reliability as the victim of a crime. Secondly, with respect to Mr. Phillips, his identification of Mr. Martin as the potential perpetrator of the burglary occurred way far in time before any information was developed regarding Mr. Phillips knowing, or suspecting rather, that Mr. Martin may have been an informant or some sort of civilian operative with the United States Fish and Wildlife Service. He didn't know at the time the affidavit was filed, was prepared? I think that the pertinent inquiry there is whether or not the timing is important in determining whether or not the information is material. I agree. And with respect to the timing, there's no information that would have impugned the integrity of Mr. Phillips' identification of Mr. Martin as the perpetrator and in the affidavit itself. It does, in fact, contain an express statement that Mr. Phillips had communicated to Detective Moss his suspicion regarding Mr. Martin being associated with the federal government in connection with the arrest of Mr. Portia. So that information is actually contained within the affidavit and there is no concealment with respect to that issue. Now, with respect to Judge Pregerson's inquiry. Didn't he, didn't Phillips tell the detective when they had that photo spread? Didn't he indicate that he'd seen this fellow before and knew of him? That statement actually was first made by Mr. Phillips straightforwardly and forthrightly to the investigating deputies who had responded to the crime scene on the day that it occurred. And with respect to that information, Detective Moss, in the record, establishes that he requestioned Mr. Phillips regarding whether or not his identification of Mr. Martin in this instance with respect to the photo lineup might have been a mistake. Given his, perhaps, prior acquaintance and visualization of Mr. Martin, to Detective Moss's satisfaction, Mr. Phillips did, in fact, reaffirm his identification of Mr. Martin as the perpetrator. On top of that, with respect to the descriptions, physical descriptions, that were provided by Mr. Martin with respect to the perpetrator, Mr. Martin's description adequately and actually quite accurately described Mr. Martin, being 6'6", 6'2", 170-ish sort of pounds, light hair, Caucasian male, and light eyes, the existence of a beard. The photograph on Mr. Martin's DMV driver's license showed that he had a beard. And, mind you, since we had mentioned, Your Honor had mentioned Judge Pregerson, Mr. Detective Moss's contact with Agent McLeod, Agent McLeod actually informed Detective Moss that Mr. Martin had a beard. So from an independent federal agent source, Detective Moss had received confirming information regarding a physical description, not only of the beard, but also of the long hair that Mr. Martin would have been wearing at about the time that the event occurred. Well, let me switch to the refusal to provide the DNA. What is your comment on that? Because it appears that it might have been used simply to justify probable cause. Well, I think that with respect to the plaintiff and appellant's contention regarding that being some sort of a misrepresentation, it turns on their misapprehension of the statement itself. A conditional offer to do something is not an offer to do it at all voluntarily. In the district court's opinion, and I understand, Judge Pregerson, that you said let's forget about the district court, but I think that Judge Gonzales did a really swell job of not only addressing that issue, but using a dictionary to determine what conditional means versus what voluntary means. And by the plain use of the words, Mr. Martin's suggestion through an attorney, actually, that he would only provide DNA samples upon receipt of an apology in conjunction with the request, is not voluntary to submit to the provision of DNA. Well, what's wrong with asking for an apology? Well, there are some very basic. Are we above that? No, I don't think that we are above that. Let us look at it not from the legal beagle kind of perspective, but from a very practical perspective. In this particular case, Mr. Martin provided a deposition. At page 145 of his deposition, he testified that he had suggested to his attorney that they ask for the apology knowing that that request would be rejected. And therefore, he himself had set up the situation prior to the acquisition of the warrant, of knowing that the condition would be met, not met, and therefore he wouldn't be providing the information. On top of that ---- Was this in that surreptitiously taped conversation? The request for the DNA sample is in the audio tape. On the audio tape. It is in the audio tape. And that's when he ---- And Mr. Martin said he is not comfortable providing it. That is the information that Detective Moss would have had at that moment in history. What we had is subsequently Mr. Martin went out and hired an attorney, Mr. Messina, who testified at deposition. He had no information that would constitute, in his opinion, any kind of alibi for Mr. Martin with respect to that. On top of that ---- Wait a second. You're talking about something that happened after the warrant issue. No, I'm talking about something that happened after the telephone conversation between Detective Moss and Mr. Martin. Mr. Martin subsequently and very quickly hired Mr. Messina to try and negotiate this deal. And that was prior to the acquisition of the warrant itself. But one other very practical consideration with respect to demanding apologies or conditioning the provision of DNA upon the issuance of an apology on behalf or by law enforcement, whether it be the district attorney's office or police officers or whatever else, is that it assumes that the government, whether it be State or Federal, is required or mandated to provide such an apology, which it is not. Second, issuance of an apology would actually have an adverse implication on any subsequent civil case that might be brought against the government. Okay. Let's ignore the apology. As I read Ninth Circuit law, a refusal to consent to search cannot be used to establish probable cause. So we can just outright refuse, not conditional. That couldn't be used. Isn't that correct? We have no disagreement with Your Honor's statement of the law. The point of inserting into the affidavit the information concerning the conversation, including Mr. Martin's refusal to provide the DNA sample, is to provide the magistrate or rather the superior court judge who would be reviewing the affidavit and warrant application with the context within which the request is being made. It also is important because it provides the lead-up factually as opposed to taking stories in bits and parts. It leads up to that portion of the story where Mr. Martin then volunteers that he perhaps was in Florida with Federal agents, and to make the bold assertion that he is essentially a cop or a law enforcement officer. That information was in fact contained within the warrant. So the judge who was reviewing the warrant application actually had a complete story with respect to the issue that Your Honor inquired about. And in conjunction with Mr. Martin, Mr. Martin volunteering that he was perhaps in Florida is essentially what Detective Moss said in his affidavit. In fact, in the affidavit itself, Detective Moss does not say that he claimed that he was in fact in Florida on the date of incident, but might have been or probably there in other places. No, because the Moss was talking to him about, well, they got, he said, well, before I can tell you where I was, you've got to give me the date. Well, I'll compromise the investigation if I do that. And then it was Moss who brought up this subject about, well, what about November? Well, he's trying to remember, where was I in November? He thought, well, maybe he was down in Florida. He said he was possibly in Florida as one possibility. Possibly in Florida. And that's what Detective Moss honestly and accurately stated. If you give me the date, I'll check my records. And when he found out the date, he looked through his phone records and he made calls from his house. Your Honor, makes two points. One with respect to the inclusion of the information regarding the Florida event. It is important to note that Detective Moss, after concluding that telephone conversation with Mr. Martin, and without revealing to Mr. Martin the exact date of the offense, contacted Mr. McCloud to find out whether Mr. McCloud was in fact, or any other Federal agent, was with Mr. Martin on the day in question, and he provided the incident date. And received information stating very clearly that Mr. Martin was not with the agents. This information or claim by Mr. Martin just kind of motivated and provided Deputy Moss with additional information to investigate and to confirm or disaffirm with respect to his investigation. With respect to... What does that add up to? That adds up to Detective Moss doing a very thorough investigation with respect to his application for the warrant application. Okay, it was a couple days before Christmas. I think you've overrun your time. I certainly did, and I thank Your Honor for your indulgence in that respect. With respect to the first point made about California law, I'll submit the additional citations on the appropriate form. The cases counsel refers to are California law based on Proposition 8, came into effect in 1982. The cases he mentioned refer only to criminal cases. That is, in criminal cases, you apply Federal law. However, Proposition 8 did not change the rule with respect to... You give us the cite. Anyway, the initial police report, page 68, 69 in the Exeter Record, where Phillips describes to the deputies how he hit the suspect on the face and on the head, and there's blood on the suspect's hand and on the fence. Obviously, Moss had read the initial police report, and in that initial description, he describes the suspect, and this is page 67, which is the initial police report, having shoulder-length, greasy hair, a full beard, and I mention that because no one has ever described David Martin. When he had a beard, as having a full beard or having shoulder-length hair or having greasy hair, and he had the pale and the suspect had the pale and freckled face, which is... I think you mentioned that before. Yes. The September 2001 conversation, again, you listen to the tape, you read it, it's obvious Mr. Martin does not know, thought he knew when the burglary had occurred just a couple of months prior, was wholly mistaken, and then... Nothing further. Thank you, Your Honor. All right. Thanks. All right. What did you say? Oh, yeah.
judges: Pregerson, Nelson, Fernandez